UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAMES KWMAE' BATTEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:25-cv-72-JSD |
| | ) |
| TREVOR FOLEY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff James Kwmae' Battee brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed without prepayment of the required filing fees and costs, ECF No. 3, and motion to appoint counsel, ECF No. 2. Having reviewed the motions to proceed without prepayment and the financial information submitted in support, the Court has determined that Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $16.40. *See* 28 U.S.C. § 1915(b)(1). Since Plaintiff is now proceeding without prepaying the filing fee, the Court will review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will issue service on Plaintiff's claims against Defendant Damien Austin in his individual capacity but dismiss without prejudice the official capacity claim against Austin. The Court will dismiss without prejudice the claims against Trevor Foley and Clay Stanton. Furthermore, the Court will deny Plaintiff's motion for appointment of counsel without prejudice.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id*.

Plaintiff is a convicted state prisoner at South Central Correctional Center in Licking, Missouri. ECF No. 1. In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted a prison account statement showing average monthly deposits of $82 and an average monthly balance of $48 over the six-month period prior to case initiation. ECF No. 4. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $16.40, which is twenty percent of Plaintiff's average monthly deposits. *See* 28 U.S.C. § 1915(b)(1).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

**The Complaint**

Plaintiff brings this 42 U.S.C. § 1983 action against three employees of the Missouri Department of Corrections: (1) Director Trevor Foley, (2) former Warden of Northeastern Correctional Center (NECC) and current Administrator Clay Stanton, and (3) Captain Damian Austin. ECF No. 1. Plaintiff indicates he is suing all the defendants in their individual and official capacities. *Id.* at 2-4.

Plaintiff describes an incident that occurred on June 7, 2023, around 5:30PM while he was in the gym at NECC. *Id* at 5. Plaintiff states the inmates in the gym were told to stay in the

3

gym while their housing unit was being searched. *Id*. Another inmate started fighting with staff. *Id*. Plaintiff alleges the officers then beat the inmate after he was restrained. *Id*. Plaintiff moved towards the back of the gym to stay away from the commotion. *Id*. A sergeant came over to Plaintiff and told him he was going to the hole. *Id*. Plaintiff asked for the sergeant's next in command and Defendant Austin approached with his mace can out. *Id*. at 6. Austin told Plaintiff to get up, and Plaintiff complied, while pleading that he did nothing wrong. *Id*. Austin told Plaintiff to shut up, but Plaintiff still tried to explain he had not done anything wrong. *Id*. Austin then said, "Say something else," and Plaintiff replied, "Something else." *Id*. Austin then maced Plaintiff and punched him in the face. *Id*. at 6-7. Plaintiff states he lost consciousness briefly. *Id*. at 7. When he woke up, several officers were on top of him, twisting his wrists and ankles, with their knees in his neck and back. *Id*.

Plaintiff then alleges that he was denied medical care. He states he was taken to "the hole" following the incident. *Id*. A nurse took his vitals. *Id*. He reported to the nurse that his head, wrist, and ribs hurt. *Id*. at 9. No other significant follow-up was done. *Id*.

Plaintiff finally alleges he was denied due process. He states that initially an investigator came to meet with him and told him that if he takes accountability, he could get out of the hole. *Id*. Plaintiff states he refused and was then left in the hole for three months "for messed up paper [sic] work." *Id*. The copy of his violation had two different dates, and this was "used as a way to detain me wrongfully." *Id*. He attaches an exhibit which he says shows that the committee used the wrong date as a reason to keep him in the hole longer. *Id*. The exhibit is a form detailing Plaintiff's 30-day administrative segregation hearing. *Id*. at 13. This form shows that the committee recommended Plaintiff be assigned to general population on July 17, 2023. *Id*. It

states that he still has a violation pending from May 25, 2023 (the correct date was June 5, 2023), but nonetheless, the committee recommended he be moved back to general population. *Id*. There is a handwritten note which reads, "Denied." *Id*. The rest of the handwritten note is illegible. Plaintiff also claims that his IRR was not in the system, which hindered his right to due process. *Id*. at 16. He provides an exhibit showing he submitted his IRR on June 29, 2023, but it was not received until October 31, 2023. *Id*. at 15.

Plaintiff alleges that the above actions show that Austin violated his Eighth Amendment rights, and Defendants Foley and Stanton violated his Fourteenth Amendment rights. For injuries, Plaintiff states he suffered a busted lip, declined vision, post-traumatic stress disorder, and night terrors. For relief, Plaintiff seeks $10 million in damages and requests that all parties involved be fired and charged with assault. *Id.*

## Discussion

After careful review and liberal construction of the self-represented amended complaint, the Court will direct that the Clerk issue service on Plaintiff's claim against Defendant Damian Austin in his individual capacity only. Further, for the reasons discussed below, the claims against Defendants Trevor Foley and Clay Stanton will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). The claim against Austin in his official capacity will also be dismissed.

### A. Official Capacity Claims

Here, Plaintiff attempts to bring suit against three state employees in their official capacity under § 1983. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir.

5

2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"). Therefore, Plaintiff's official capacity claims will be dismissed.

**B. Damian Austin**

Plaintiff alleges that his Eighth Amendment rights were violated by Defendant Austin in his individual capacity. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The use of pepper spray against an inmate does not – without more – constitute excessive force under the Eighth Amendment. *See Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (explaining that "a limited application of [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force"). Used appropriately, the application of pepper spray "should rarely be a proper basis for judicial oversight." *Id*. However, the use of pepper spray may constitute excessive force based on allegations that its deployment "involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary super-soaker quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); and *Lawrence v. Bowersox*, 297 F.3d 727, 730 (8th Cir. 2002)).

Taking Plaintiff's factual allegations as true, Austin used pepper spray against Plaintiff without warning and then punched Plaintiff in the face with such force that Plaintiff was knocked unconscious. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of cruel and unusual punishment under the Eighth Amendment. Austin's actions, particularly the punch after Plaintiff had been pepper sprayed, could be viewed as an unnecessary and wanton infliction of pain. As such, the Court will direct that process issue on this claim.

**C. Trevor Foley and Clay Stanton**

Plaintiff alleges Defendants Foley and Stanton violated his Fourteenth Amendment due process rights by keeping him in administrative segregation without a thorough investigation of

the incident, and due to paperwork errors. To prevail on a Fourteenth Amendment due process claim, a plaintiff must first demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, a plaintiff must be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). As life or property is not at issue in this case, Plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996)

8

(stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847. *See also Kennedy,* 100 F.3d at 641-42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); *Hemphill v. Delo,* 124 F.3d 208 (8th Cir. 1997) (stating that 290 days in administrative segregation was not a significant deprivation and thus insufficient evidence to support the disciplinary action was immaterial). *But see Williams v. Norris*, 277 Fed. Appx. 647, 648 (8th Cir. 2008) (stating that twelve years in administrative segregation confinement is an atypical and significant hardship).

Here, Plaintiff complains that he was placed in administrative segregation without cause for three months. Taking Plaintiff's allegations as true, even if he were only in administrative segregation due to incorrect paperwork and an incomplete investigation of the inciting incident, this is still insufficient to show an atypical or significant hardship. A prisoner who is placed in administrative segregation without cause for three months is not an atypical and significant hardship under the well-established precedent set by the Eighth Circuit. Therefore, Plaintiff has failed to state a claim upon which relief can be granted as to an alleged due process violation.

### Appointment of Counsel

Finally, Plaintiff has filed a motion for appointment of counsel. ECF No. 2. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court

9

must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of law. Further, the request for counsel is premature, as a defendant has not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of counsel would not be of sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motion for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 3) is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $16.40 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his

prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants Clay Stanton and Trevor Foley because, as to these defendants, the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants Clay Stanton and Trevor Foley are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's claim brought against Defendant Damian Austin in his official capacity is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Defendant Damian Austin in his individual capacity.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (ECF No. 2) is **DENIED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 3rd day of February, 2026.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE